STATE OF IOWA, ex rel. JAMES DAVITT et al., Appellants, v. G. E. CROW et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—Elec-tions—Statutes. The authority under Sec. 2794-a, Code Suppl. Supp., 1915, given to the school corporation having the largest number of voters, to call an election for a consolidated school district, having been stricken out by the amendment of that law by Ch. 432 of the 37th G. A., the power to call such an election was withdrawn, and an election thereafter held; and all proceedings founded upon that election were void, because such election was not called by anyone authorized to call it.

*Appeal from Warren District Court.*—LORIN N. HAYS, Judge.

MAY 21, 1919.

ACTION in quo warranto to test the legality of the formation of a consolidated independent school district. Opinion states the facts. The case was decided on demurrer. The district court held the consolidated district legally formed, and dismissed plaintiffs' petition. Plaintiffs appeal.—*Reversed.*

*Berry & Watson,* for appellants.

*F. P. Henderson* and *George Cosson,* for appellees.

GAYNOR, J.—This action is brought in quo warranto to test the legality of the formation of the Consolidated Independent School District of Martensdale, Warren County. The plaintiffs are residents and taxpayers within the district. The petition was filed on the 10th day of December, 1917. A demurrer was filed to the petition and sustained, and plaintiffs appeal.

The court held that the district was properly organized under the provisions of Section 2794-a, Supplemental Supplement, 1915, as amended by Chapter 432 of the Acts of the Thirty-seventh General Assembly, being an act to amend Section 2794-a of the Supplemental Supplement to the Code, 1915, relating to consolidated school districts, which reads, so far as material to this controversy, as follows:

"When a petition describing the boundaries of contiguous territory, containing not less than sixteen sections * * * is signed by one third of the electors residing in such territory and filed with the county superintendent, * * * the county superintendent with whom such petition is filed, shall fix a time for hearing such petition not less than five nor more than fifteen days thereafter at which time written objections to the proposed boundaries of the proposed consolidated district may be filed with such county superintendent by any person residing or owning land within such proposed boundaries * * * Notice of the time and place of hearing shall be given in a newspaper published * * * At the time and place so fixed, all objections to said proposed boundaries then filed shall be heard by such county superintendent * * * after which hearing, the said county superintendent shall fix and determine the boundaries of the proposed consolidated district. * * * Any person having filed such objections and being aggrieved by the ruling of the county superintendent may appeal therefrom to the county board of educa-

tion. * * * If no objections be filed, or if, after final hearing, the objections are not sustained, and the said petition is approved it shall be the duty of said board of directors, within ten days, to call an election in the proposed consolidated district, notice of which shall be given by publication * * * at which election all voters residing in the proposed consolidated district shall be entitled to vote by ballot for or against such separate organization. * * * If a majority of the votes so cast in each territory shall be in favor of such independent organization, the organization of the proposed consolidated independent school corporation shall be completed by the election of a board of directors for said school corporation."

It appears from the petition filed, to which the demurrer was interposed, that the defendants are electors and inhabitants of the territory included in the proposed consolidated independent school district, and, on the 14th day of July, 1917, they filed a petition with the county superintendent of Warren County for the establishment of a proposed consolidated independent school district, to include territory described in said petition; that thereafter, the superintendent approved said petition in due course, and fixed and determined the boundaries of the proposed consolidated district. Thereafter, without further proceeding, one John F. Martens, secretary of the board of directors of the Independent School District of Spring, situated within the proposed district, and the school corporation having the largest number of voters, proceeded to and did call an election, and gave notice of such election as required by Section 2794-a, Supplemental Supplement, 1915, before it was amended by Chapter 432 of the Acts of the 37th General Assembly. The election was called for and held on the 10th day of September, 1917, for the purpose of voting on the establishment of the proposed consolidated independent school district, within the bounds as fixed by the

county superintendent. The call and notice appeared to be in due form, and would be effectual for the purposes, provided that Martens, as secretary of the board of directors of the Independent School District of Spring had authority, under the statute as amended, to call the election. It will be noted, from an examination of Section 2794-a of the Supplemental Supplement, 1915, that the petition was required to be approved by the county superintendent, and filed with the board of the school corporation situated in the proposed district having the largest number of voters. It was then made the duty of that board to call an election in the proposed consolidated district, fix the date of the election, and give notice. Under this section, the petition must be filed with the school corporation in the proposed district having the largest number of voters. Then it became the duty of that board, through its proper officers, to call an election and give notice, and upon this call and this notice, the election could be legally held. It will be noted that all of this Section 2794-a of the Supplemental Supplement of 1915 was repealed or stricken out by Chapter 432 of the Acts of the Thirty-seventh General Assembly, and in the repealing act, no one was definitely designated or pointed out or empowered to call an election, and no one definitely pointed out or empowered to give notice of the election or to fix the time and place of holding it. The only designation found in this amendment by the thirty-seventh general assembly is that "it shall be the duty of said board of directors, within ten days, to call an election."

Now, in any proposed consolidated district, there may be and nearly always is more than one corporation included within the boundaries of a proposed independent consolidated district. The words "said board" do not, therefore, refer to any board with any definiteness or distinctness from which it can be known what board of the several school corporations included within the proposed district

is referred to. In the old section, it was definitely fixed, but the old section was all stricken out, and this new one adopted. The Acts of the Thirty-seventh General Assembly, therefore, are the only acts to which we can look for information as to what person, body, corporation, or district is authorized to act for and in behalf of the people of the proposed district in calling an election, or in the giving of notice that justifies the election. Under the old statute, the board was plainly designated, while under the act of the thirty-seventh general assembly, all the plainness of the old statute, in this respect, is eliminated, and no authority given to any particular board to call an election, or to give notice of it. No doubt the proposers of this district, not finding it definitely fixed in Chapter 432 of the Acts of the Thirty-seventh General Assembly, thought it proper to follow the provision of the original statute, Section 2794-a, Supplemental Supplement of the Code, 1915, and did follow it; but that section was all stricken out, and all authority founded on that section was gone. Therefore, we have the law fixing no particular body as authorized to call an election, or to give notice of an election, or to hold an election.

It is an old saying that "the majority rules," but to make the act of the majority binding on the minority, when expressed at the ballot, the election at which the ballot is cast must be one authorized by law. To be authorized by law, it must be called and held under the sanction of the law. It must be called by one authorized under the law to call an election, and the notices must be issued under authority of law by a person designated in the law to give the notice. There is no such thing as a voluntary election, by which the minority can be bound by the act of the majority. The district judge, in disposing of this case, evidently held that, by the words "said board," reference was made to the board designated in Section 2794-a, Supplemental Supple-

ment, 1915; but this cannot be true, for the thirty-seventh general assembly, in enacting the law as found in Chapter 432, distinctly repealed or struck out all the provisions of Section 2794-a of the Supplemental Supplement, 1915, and with it struck out all provisions vesting any authority to call an election, in a school corporation therein named. It is true that it is the duty of this court, if possible, to construe a statute so as to carry out the purpose and object of the statute, as exposed to the judicial mind from the act itself. But where, in the act itself, there is nothing to designate the person or body authorized to call an election, though an election is contemplated, an election cannot be held, because there is no one designated or authorized to call it, and in calling it, bind the minority by the action of the majority. When the legislature, in its act expressed in Chapter 432 of the Acts of the Thirty-seventh General Assembly, deliberately struck out all the provisions of Section 2794-a, it deliberately struck out that provision which authorized the school corporation within the proposed district having the greatest number of voters, to call an election. It will be noted that, in the act of the thirty-seventh general assembly, the petition is required to be filed with the county superintendent. There is no provision that it be filed with the corporation having the largest number of voters, nor is there anything in this act to show that that corporation had any more authority or any greater power to act than any other school corporation within the same proposed territory. There is no provision made for filing the petition originally with this board, and there is no provision that it shall be filed with this board after it has been examined and approved and the boundaries fixed by the county superintendent, and there is no provision that the county superintendent shall notify this board of the filing of the petition, or of his action in approving the petition and fixing the boundaries.

There is no provision in the act of the thirty-seventh general assembly conferring any authority on any school corporation within the proposed consolidated district to do anything, or to take any act in any of the proceedings necessary to the consummation of its organization. The words "said board of directors" have no antecedent in this statute, and by their use the attention is directed to no board of directors mentioned in the statute to which they can refer. Eliminating these words as meaningless, and as having no antecedent, and as referring to no particular board, it would appear logically, from the act itself, that the county superintendent is the one in whom the authority to call the election should be vested. He is the one with whom the petition is filed. He is the one who passes upon its sufficiency. He is the one who fixes the boundaries. He is the one to whom complaints are made; but the act does not direct him to call an election, or order or give notice, or to notify any school corporation within the district of the filing of the petition, or of his action thereon. If we were to seek for authority vested in someone to call this election, we surely would be forced to find it, if found at all, vested in the county superintendent, and not in any board of directors within the proposed district. The election in this case was not called by the county superintendent, and it is not pretended that he authorized the calling of it. It is not shown that he had any notice of the calling of it. It was called on the independent action of a school corporation within the district assuming to have the largest number of voters. We may assume that it did have the largest number of voters; but the act of the legislature under which this district was organized, did not confer upon it the power to call an election.

This was a special election. The time was not fixed by statute for the holding of the election. The statute reads:

"If no objections be filed, or if, after final hearing, the objections are not sustained, and the said petition is approved [all of which must be done by the county superintendent] it shall be the duty of *said board of directors*, within ten days, to call an election in the proposed consolidated district, notice of which shall be given," etc.

Of course, upon the filing of a petition and its approval by the county superintendent, and the fixing of the boundaries, it should be the duty of someone to call an election, and that duty, when imposed, can be enforced by mandamus. This court has so held. But a legal duty must rest upon someone, and must be found in the law before mandamus could be made effectual. Surely, an action of mandamus against the school district having the largest number of voters in the proposed district could not be sustained, because no duty rested on it to do the thing. No one could be mandamused to call an election unless the duty rested upon him to do so under the law. If the law imposed no duty, and he could not be compelled by mandamus to act, then his action must be, if at all, voluntary. See *State v. Buck*, 13 Neb. 273 (13 N. W. 406); *Jacksonville, N. W. & S. E. R. Co. v. Town of Virden*, 104 Ill. 339, in which it is said:

"It has been frequently held that an election can be ordered only by the persons or functionaries designated by the law,—that an election called by any other person or body is absolutely void, and so of all acts growing out of or performed under it."

That case involved the issue of bonds. It was further said:

"It is alleged that no ordinance was ever passed requiring or authorizing an election, or the town clerk to give a notice of an election, to determine whether the subscription should be made, and on what terms and condi-

tions. These, under the statute, were indispensable to the validity of the subscription."

The right to call the election, in that case, was vested in the common council.

Of course, there is a distinction made between general elections, when the time and place are fixed by statute, and special elections, which, to be effectual, must be called, and the time and place of holding the election fixed by somebody authorized to call and fix the time and place. See, also, *Stephens v. People*, 89 Ill. 337, 344, in which it is said:

"The person required by law to call an election and fix the time and place of holding it must call it, or the election will be invalid. Though there may have been a palpable omission of duty on the part of the council in not calling the election, and for the corrupt purpose,   *   *   * that would not give to the mayor alone the power to call the election."

It is apparent that, to make the result of an election binding upon the minority, the election must be legal. See *Force & Co. v. Town of Batavia*, 61 Ill. 99. This was an action to enjoin the delivery of certain bonds alleged to have been voted by the town of Batavia. It was held that an election not ordered by the proper authority, conferred no power to issue bonds. The authority was vested in the county court to order the election, and a vote to be taken. The election was called by the board of supervisors, the county court taking no part in it. It was held that the issue was void for want of authority in the board of supervisors to call an election. See, also, *Clarke v. Board of Supervisors*, 27 Ill. 305, in which it was held that, where bonds to aid the construction of a railroad were issued in pursuance of an election held without warrant of law, because not called by a person or tribunal having authority to call it, they were absolutely void.

In this case, the election would have been just as valid if called by any citizen within the proposed consolidated district, or by any other school corporation within the proposed district, as it is when called by the district having the largest number of voters. The legislature, by striking out all the provisions of Section 2794-a, Supplemental Supplement, 1915, withdrew from this district the authority therein conferred, and left it as powerless to act as if no authority, at any time, had been ever conferred upon it to do the thing that it proposed to do in this case. We are clearly of the opinion that the election was void, because not called by anyone authorized to call it, and that all proceedings founded upon that election are void.

Since this case came to us, the legislature has not only rewritten the statute, but has passed a legalizing act. This legalizing act excepts, however, from its operation, cases then pending. This case was then pending, and is excepted.

We think the court was wrong in its holding, and the cause should, therefore, be—*Reversed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.