EVANS, C. J., STEVENS and ARTHUR, JJ., concur.

---

H. F. VAN GORDEN, Appellant, v. JOHN SCHULLER et al., Appellees.

**APPEAL AND ERROR:** When Appeal Lies—Objectionable Recitals of
1 Fact. A decree is one thing; a *recital of fact* in a decree is a very different thing. Appeal will not lie for the sole purpose of *expunging the recitals*—especially when the decree is a consent decree.

**APPEAL AND ERROR:** When Appeal Lies—Consent Decree. Prin-
2 ciple reaffirmed that no appeal lies from a consent decree.

**APPEAL AND ERROR:** Remand in Equity Cause. The appellate court
3 may not remand an equity cause, for the making and trial of new issues at law.

*Appeal from Palo Alto District Court.*—N. J. LEE, Judge.

DECEMBER 13, 1921.

SUIT in equity, for the specific performance of an alleged contract for conveyance of land. There was also a cross-action, or counterclaim, in equity, asking that the alleged contract be found null and void, and that the same be canceled of record. Pending the trial, plaintiff dismissed his petition, and the issues upon the cross-petition were tried, and found in favor of defendants. The plaintiff appeals.—*Affirmed.*

*McCarty & McCarty* and *Heald & Cook,* for appellant.

*Davidson & Burt,* for appellees.

WEAVER, J.—On May 21, 1919, the defendants Anthony F. Lodes, Frank J. Lodes, Margaret Schuller, Thera Namer, Mary Dawson, and Elizabeth Ruppert were the owners as tenants in common of 276 acres of land in Palo Alto County, Iowa, having acquired such title by descent from their father, Wencel Lodes, deceased. The defendant John Schuller had been the administrator of the estate of Wencel Lodes, but had settled the estate and been discharged. One or more of the heirs were nonresidents of the state; and by mutual consent, after Schuller was discharged as administrator, he continued to exercise a degree of care and management of the property; but there is no evidence that the heirs had authorized or empowered him to sell it. On the date named, the plaintiff, Van Gorden, and the defendant John Schuller, describing himself as "administrator of the Lodes Estate," executed a written contract, by the terms of which the latter undertook to sell and convey to the former all of said property at the stated price of $55,200, payable in installments. The writing was signed by the plaintiff and by Schuller, who again described himself as "Admr. Lodes Est." This action to specifically enforce the contract was begun August 13, 1920. The petition states, in substance, that, while Schuller informed plaintiff that he was not then in fact administrator of the estate, he was the authorized agent of the several heirs to make the sale; that plaintiff, relying thereon, signed the instrument and paid to Schuller the sum of $2,000, as called for by the contract, and has ever since been able, ready, and willing to comply with it and to perform all his obligations thereunder; and that he has, in fact, tendered such performance. He further alleges that, although Schuller was, in fact, the authorized agent of his codefendants in that transaction, they have refused to perform their agreement; and he prays a decree for specific performance, and, in the event performance cannot be had, demands recovery of damages.

Answering the petition, the defendants deny the authority of Schuller to make the contract sued upon, and by way of cross-

petition allege that, in taking said contract, plaintiff knew that Schuller had been discharged as administrator of the Lodes estate, and had no authority to sell the land or to make contract for such sale, and knew that the land was the property of the Lodes heirs. They further allege that plaintiff had caused the contract to be recorded in the office of the county recorder, thereby creating an apparent cloud upon defendants' title; and they demand, by way of affirmative relief, that the contract be declared void, and the record thereof canceled.

On the trial of the main case, the plaintiff found himself obliged to go into the camp of his adversaries in quest of evidence of Schuller's authority to make the contract, and placed the defendants, or several of them, on the witness stand for that purpose. It developing that these witnesses were united in denying that they had authorized or ratified such alleged sale or agreement to sell, plaintiff voluntarily dismissed his suit. When such dismissal was announced, there followed a colloquy between court and counsel, as follows (Mr. Heald speaking for the plaintiff and Mr. Davidson for the defendants):

"Mr. Davidson: That still leaves the cross-petition to be disposed of, and we want the court to make an entry in regard to this petition, and we would like to get ready for evidence in support of the cross-petition. We haven't offered a word of evidence as yet.

"Mr. Heald: There is no use of offering any evidence on that. All of the evidence is before the court.

"Mr. Davidson: Well, we want to offer some evidence, and propose to offer it on this issue.

"The Court: If the plaintiff consents to the claim made in the counterclaim, of course there would be no use of any further evidence.

"Mr. Heald: We concede that the contract may be canceled of record, and may be canceled by the court.

"Mr. Davidson: Well, there are certain findings we are going to ask the court to make in this case, and we are going to produce evidence in support of our cross-petition.

"Mr. Heald: We admit the relief asked for in your cross-petition, but not the allegations and conclusions of the pleading.

"The Court: If that is true, Mr. Davidson, they cannot

by dismissal prejudice the rights of the defendant. In light of the further concession of record that he consents that the prayer and relief asked for in the cross-petition shall be granted by the court, that the contract shall be canceled and the record be expunged, and the recording of it be expunged and the cloud removed from the title, what is there left?''

The printed record does not disclose whether further evidence was offered. The court entered a decree in defendants' favor upon their cross-petition, adjudging the contract void, and canceling the record thereof. In the form of the decree as entered were embodied findings in substance as follows: (1) That the contract was not authorized or ratified by the defendants; (2) that, at the time of executing the writing, Schuller informed plaintiff he had no authority to bind the defendants thereby; (3) that, when obtaining the writing, plaintiff agreed to prepare a new contract and submit it to the defendants for their signatures; (4) that Schuller made full disclosure to plaintiff, at the time of executing the contract, of the extent of and limitation upon his authority to represent the owners of the land; (5) that the contract should be canceled; (6) that the record of the contract creates a cloud upon the defendants' title which they are entitled to have removed; and (7) that Schuller has tendered to plaintiff a return of the installment paid to him on the contract, and that the tender is on deposit with the clerk of the court for plaintiff's use.

I.   While the notice of appeal is from the decree generally, plaintiff's counsel concede that the defendants were entitled to the relief demanded in their cross-petition, and that the court properly granted it; but they take exception to some of the findings recited in the decree. In other words, counsel say, in their reply argument:

1. APPEAL AND
ERROR: when
appeal lies: ob-
jectionable re-
citals of fact.

''We are not appealing from the relief granted in the case below, but we are appealing from the unwarranted findings of facts, which were not necessary to support the relief granted in the decree, and were outside of the issues and the evidence on the issues as presented by the cross-petition.''

The ground for this somewhat peculiar proposition appears to be that plaintiff, having dismissed his suit for specific

performance, desires to bring action at law against Schuller for damages, and fears that the findings of fact in the decree rendered upon defendants' cross-petition may have the effect of an adjudication against him. To avoid that possibility, he asks this court, in effect, to strike the objectionable findings from the decree below without reversing, or in any manner interfering with the relief granted.

The question presenting itself at the threshold of the case is whether such an appeal can be sustained. We are of the opinion that it cannot. Plaintiff offers no objection to the decree as such. He concedes that, under the record as made, defendants were entitled to the very relief granted them, and does not ask for its reversal or modification, but wishes us to put the stamp of error upon the court's recitation of the alleged facts which it finds or believes were established by the evidence. An appeal lies only from a final judgment or decision of the trial court (Code Section 4100); or from—

"1. An order made affecting a substantial right in an action, *when* such order, in effect, determines the action and prevents a judgment from which an appeal might be taken;

"2. A final order made in special actions * * * or made on a summary application in an action after judgment;

"3. An order which grants or refuses, continues or modifies, a provisional remedy; * * *

"4. An intermediate order involving the merits or materially affecting the final decision;

"5. An order or judgment on habeas corpus." Code Section 4101.

Now the recital or findings of fact by the trial court is not a final judgment or decision; it is not a decree; it is not an order; it fits into none of the statutory definitions of things appealable. If the plaintiff were objecting to the decree and seeking its reversal or modification, then his objection to the finding of facts would be pertinent, and would become a proper subject for our consideration; but the course of reasoning pursued by the court in reaching an admittedly correct conclusion is immaterial. If the action had been tried at law, and the judgment entered had been concededly right, the fact that the jury, in addition to its general verdict, had returned a series of spe-

cial findings contrary to the views of one or both of the parties would afford neither of them a right of appeal. Whether such findings would have any value as evidence or otherwise in any future litigation between them is a question which this appeal does not present for our consideration.

The decree, properly speaking, includes only that part of the court's final pronouncement which adjudicates and determines the issues in the case and defines and settles the rights and interests of the parties so far as they relate to the subject-matter of the controversy. If the court goes further, and sets forth the reasons which have influenced its decision, such statement or opinion is not an essential part of the decree. The reasoning may be unsound; but if the conclusion is right, or if its correctness be conceded by the party against whom it is announced, the error in reasoning is not prejudicial, and will not be the subject of review on appeal. As has been well said by the Maryland court, in a recent case:

"The reasons upon which the court acted, as expressed in its opinion, are one thing; the thing decreed is quite a different thing."

Upon this proposition, the court quotes approvingly from Miller's Equity Procedure, Section 260, as follows:

"The decree of a court of equity, and not its opinion, is the instrument through which it acts in granting relief. The opinion of the court does not constitute a part of the decree or of the record. It is the expression of the reasons by which the judge reaches his conclusion. The decree, on the other hand, is the fiat or sentence of the law determining the matter of the controversy. An opinion, however positive, is not in any sense a final act; it is not the subject of appeal, and may always be changed before final decree. The reasons assigned for a decree are no part of the decree itself."

To the same purport is the statement by Mr. Justice Field, in *Durant v. Essex Co.*, 7 Wall. (U. S.) 107, where, speaking of a decree in an equity case, he says:

"The division of opinion between the judges was the reason for the entry of the judgment; but the reason is no part of the judgment itself."

Again, it must not be overlooked that the decree in the

instant case was entered by and with the consent of the plain-
tiff; and it is well settled, as a matter of plain reason and of
unbroken precedent, that such consent operates as a waiver of

**2. APPEAL AND ERROR: when appeal lies: consent decree.** the right of appeal. See *Truitt v. Mackaman,*
162 Iowa 253; *Cameron v. Smith,* 171 Mich. 333
(137 N. W. 265); *Rector v. Rector,* 134 App.
Div. 452 (119 N. Y. Supp. 328); *City of Lawton v. Ayres,* 40
Okla. 524 (139 Pac. 963); *Board of Com. v. Scott,* 19 Ind. App.
227 (49 N. E. 395).

For the reasons stated, we think the record discloses no
right of appeal in the plaintiff.

II.  Plaintiff's counsel, apparently anticipating this con-
clusion, asks that:

"If the court should decide that the findings of fact ob-
jected to were valid, and should also decide that

**3. APPEAL AND ERROR: remand in equity cause.** the said findings would preclude the plaintiff at
law, then this case should be remanded back to
the court below, for further hearing on the cross-petition in
furtherance of truth and justice."

The court cannot, in this case, properly undertake to de-
cide what, if any, effect the findings of fact mentioned in the
preceding paragraph may have upon the plaintiff's right to main-
tain an action at law for the recovery of damages. We have
our fill of difficulties with cases coming to us in the regular
order of appeals, without attempting to decide others in ad-
vance of their commencement.

Neither is it within the scope of our appellate jurisdiction
to remand this proceeding to the district court for the making
and trial of new issues at law. The doors of the trial court are
open to the parties, and their claims can there be tried and de-
cided in the usual manner. There remains nothing now for us
to do, except to order that the decree appealed from be—
*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.